

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 23 2021

CLERK, U.S. DISTRICT COURT
By_____
          Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

JOHN ANTHONY DOBBS, §
§
Petitioner, §
§
v. § No. 4:20-CV-354-A
§
BOBBY LUMPKIN, Director, §
Texas Department of Criminal §
Justice, Correctional §
Institutions Division, §
§
Respondent. §

**MEMORANDUM OPINION**
**and**
**ORDER**

This is a petition for a writ of habeas corpus pursuant to
28 U.S.C. § 2254 filed by petitioner, John Anthony Dobbs, a state
prisoner confined in the Correctional Institutions Division of
the Texas Department of Criminal Justice, against Bobby Lumpkin,
director of that division, respondent. After having considered
the pleadings, state court records, and relief sought by
petitioner, the court has concluded that the petition should be
denied.

**I. FACTUAL AND PROCEDURAL HISTORY**

In July 2016 petitioner was indicted in Tarrant County,
Texas, Case No. 1452534D, on one count of sexual assault of a
child under 17 years of age. (Clerk's R. 6, doc. 15-2.) The
indictment also included a habitual-offender notice. A jury found
petitioner guilty of the offense, petitioner pleaded true to the
habitual-offender notice, and the trial court assessed his

punishment at 75 years' confinement. (Id. at 93.) Petitioner's conviction was affirmed on appeal and the Texas Court of Criminal Appeals refused his petition for discretionary review. (Electronic R., doc. 15-1.) Petitioner also filed a state habeas-corpus application challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court and the court's independent review of the record. (Action Taken, doc. 15-16.) This federal petition for habeas-corpus relief followed.

The evidence at trial reflects that petitioner was a long-time friend of J.C.'s father and was staying in their garage apartment with his wife, Terry. (Reporter'r R., vol. 4, 42–43, doc. 16-6.) J.C. who was 14 years old at the time referred to petitioner as Uncle Andy. (Id. at 42, 84.) Around 5:00 a.m. on the morning of March 7, 2016, J.C. texted an acquaintance, T.B., indicating that

> My uncle. I was on my phone talking to him in the garage and he started smoking with me. I was, like, okay, it's all okay, we're just smoking. But it wasn't weed. I don't know what it was, but he took my phone and started undressing me. I told him to stop. He kept going and going. He went in. I don't think he was wearing a condom or anything, but it hurts. And he finished and got dressed. Then I got dressed and ran and locked myself in the bathroom. I can't breath. I'm crying.

(Reporter's R., vol. 4, 21–28, doc. 15-6.) T.B. texted J.C. to get her dad, but J.C. responded that she was too scared and didn't want petitioner to hear anything. (Id. at 28.) T.B. tried

2

calling J.C., but J.C. did not answer. T.B. then called J.C.'s
father and informed him of J.C.'s allegations. (Id. at 29.)
J.C.'s father grabbed a pistol from his closet and went in search
of petitioner, but all the doors in the house were unlocked and
open and petitioner had fled. (Id. at 52, 91.) The authorities
were then notified and J.C. was taken to Cook Children's Medical
Center for a sexual assault exam. (Id. at 54, 62.) Several days
later J.C.'s father and petitioner, using his wife's phone,
exchanged texts messages in which petitioner stated:

> For everything that I'm responsible for, I can't
> even describe the devastation to my soul. And I only
> know one way to try to provide a small amount of peace
> of mind. It's not an ideal fix for all of it or
> everyone, but it's my only option. I hope it helps.

> Everything and everyone that mattered to me is
> gone forever, and I know that I'm to blame and so that
> -- and so is the shit. And we never had anything in or
> at your place until Terry and I split up, and that
> whole night was a direct result of me over ramping,
> then ODing.

> I came to yesterday in a cow pasture being rained
> on, still unclear how I got there or details of a lot
> of past a certain point, and there isn't any excuses.
> That motherfucker wasn't who I am, and the fact that I
> chose to get high and provide the opportunity for that
> motherfucker to destroy my life and harm those I love
> will haunt me for eternity in hell. Please don't make
> Terry and others pay for my mistake. I'm about to pay
> all I can towards that. I hope it helps.

> . . .

> I'm going to give you all that left's of me in a
> little while and I gladly give you the prominent place
> of making it happen, but that would only add to your
> burdens. Know that I give it because it's owed. I don't
> blame you for anything and know that the man you

3

trusted wasn't the man responsible for this. But I give
you the shattered fragments that's left. You don't need
to twist the blame. Nothing can top the destruction of
my heart and soul. See you on the other side.

(Id. at 76-78.)

Additionally, the SANE nurse testified to the details of the

sexual assault as reported by J.C. and that the exam revealed

recent trauma to J.C.'s hymen. (Id., vol. 5, 9, 18-19, 26, doc.

15-7.) There was also testimony establishing that the DNA profile

of the semen found in J.C.'s vagina matched petitioner's DNA.

(Id. at 61.)

## II. ISSUES

In four grounds, petitioner raises the following claims:

(1)   The retired visiting judge lacked the legal
      qualifications of office as required by Texas
      Government Code as well as the United States and
      the State of Texas Constitutions;

(2)   The state engaged in prosecutorial misconduct by
      positioning a large screen video monitor directly
      behind petitioner during voir dire, publishing mug
      shots of famous sex offenders, and asking "what
      does a sex offender look like";

(3)   He received ineffective assistance of trial
      counsel; and

(4)   He received ineffective assistance of appellate
      counsel.

(Pet. 6, 8-9, 11, 17-20, doc. 1.)

## III.   RULE 5 STATEMENT

Respondent believes that petitioner has sufficiently

exhausted his claims in state court and that the petition is

neither barred by the statute of limitations nor subject to the successive-petition bar. (Resp't's Answer 6-7, doc. 16.)

## IV. PROCEDURAL DEFAULT

As a preliminary matter, respondent asserts that petitioner's first and second grounds are procedurally barred from the court's review because they were procedurally defaulted in state court. (Resp't's Answer 7-9, 12, doc. 16.) Under the procedural-default doctrine, federal courts are precluded from federal habeas review where the last state court to consider the claim raised by the petitioner based its denial of relief on an independent and adequate state-law procedural ground. *Coleman v. Thompson,* 501 U.S. 722, 729-30 (1991).

Under his first ground, petitioner claims that the retired judge assigned to preside over his case lacked the legal qualifications of office as required by the Texas Government Code and the Texas and United States Constitutions because the judge had not taken the oath of office since retiring in 2012. (Pet. 5, 17, doc. 1.) The state habeas court concluded that the claim was an impermissible collateral attack upon the judge's authority to preside at trial, citing to *Ex parte Lefors,* 347 S.W.2d 254 (Tex. Crim. App. 1961), in which the Texas Court of Criminal Appeals explained that

> [i]t has been the consistent holding of this Court, as
> well as the courts of other jurisdictions, that a
> collateral attack upon the qualifications of a district
> judge, such as by habeas corpus, cannot be sustained.

5

> While he is in possession of the office under color of
> title, discharging its ordinary functions, a judge's
> official acts are conclusive as to all persons
> interested and cannot be attacked in a collateral
> proceeding, even though the person acting as judge
> lacks the necessary qualifications and is incapable of
> legally holding the office.

*Id.* at 254-55.

Clearly, the state court's decision rested on a state-law procedural rule independent of petitioner's claim. Thus, the procedural default in state court precludes federal habeas review of the claim.[1] *Wainwright v. Sykes,* 433 U.S. 72, 87, (1977); *Ogan v. Cockrell,* 297 F.3d 349, 356 (5th Cir. 2002).

Under his second ground, petitioner claims that the prosecution engaged in misconduct by positioning a large-screen video monitor behind him during voir dire, showing mug shots of famous sex offenders and asking "what does a sex offender look like." (Pet. 8, 18, doc. 1.) The state habeas court concluded that this claim was forfeited because petitioner did not object at trial. (SHR 81, doc. 15-18.) Texas's contemporaneous-objection rule is an independent and adequate state-law procedural ground on which to deny federal habeas review. *See Amos v. Scott,* 61

---

[1]Even if this claim had not been defaulted in state court, petitioner would not prevail on the claim. Petitioner's claim arises solely under state law and is, thus, not cognizable on federal habeas review. *See Ramos v. Dretke,* No. 4:04-CV-459-A, 2005 WL 39144, at *3 (N.D. Tex. Jan. 6, 2005), *R. & R. adopted,* 2005 WL 233952 (N.D. Tex. Jan. 31, 2005); *Bresler v. Dretke,* No. 3:04-CV-2046-B, 2006 WL 1867836, at *2 (N.D. Tex. July 6, 2006); *Pierce v. Director,* TDCJ-CID, No. 4:06-CV-258, 2013 WL 1796137, at *17 (E.D. Tex. Apr. 26, 2013); *Turner v. Quarterman,* No. A-08-811, 2009 WL 2406203, at *8 (W.D. Tex. Aug. 3, 2009).

F.3d 333, 340-41 (5th Cir. 1995). Thus, the procedural default in state court precludes federal habeas review of the claim. *Wainwright*, 433 U.S. at 87; *Ogan*, 297 F.3d at 356.

A petitioner may overcome a state procedural bar by demonstrating either cause for the procedural default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice—*i.e.*, that he is actually innocent of the offense for which he was convicted. *Coleman*, 501 U.S. at 750. Petitioner acknowledges that the state habeas court applied procedural bars to these claims but asserts that his trial counsel's ineffectiveness was the cause of his failure to preserve the errors. (Pet'r's Traverse 2-5 , doc. 26.) Although a petitioner may show "cause" by proving ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution, *Martinez v. Ryan,* 566 U.S. 1, 14 (2012), petitioner fails to demonstrate that his ineffective-assistance-of-trial-counsel claims have any merit, *see infra.* Because petitioner fails to establish a *Martinez* exception to the procedural default of grounds one and two, the grounds are barred from this court's review.

### V. LEGAL STANDARD FOR GRANTING HABEAS CORPUS RELIEF

A § 2254 habeas petition is governed by the heightened standard of review provided for in the Anti-Terrorism and

7

Effective Death Penalty Act. 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. 28 U.S.C. § 2254(d)(1)-(2); *Harrington v. Richter,* 562 U.S. 86, 100 (2011). This standard is difficult to meet and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. It is the petitioner's burden to rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Further, when the most recent state court to consider a constitutional issue provides a "reasoned opinion," a federal habeas-corpus court must "review[] the specific reasons given by the state court and defer[] to those reasons if they are reasonable." *Wilson v. Sellers,* --- U.S. ---, 138 S. Ct. 1188, 1191-92 (2018). Under those circumstances, a federal court should

8

"'look through' the unexplained decision to the last related state-court decision providing" particular reasons, both legal and factual, "presume that the unexplained decision adopted the same reasoning," and give appropriate deference to that decision. *Id.*

## VI. DISCUSSION

Under his third and fourth grounds, petitioner claims that he received ineffective assistance of counsel at trial and on appeal. (Pet.9, 11, 19–20, doc. 1.) A criminal defendant has a constitutional right to the effective assistance of counsel at trial and on the first appeal as of right. U.S. CONST. amend. VI, XIV; *Evitts v. Lucey,* 469 U.S. 387, 396 (1985); *Strickland v. Washington*, 466 U.S. 668, 688 (1984). *See also Smith v. Robbins,* 528 U.S. 259, 287–88 (2000) (applying *Strickland* standard to ineffective assistance claims against appellate counsel). To establish ineffective assistance of counsel, a petitioner must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that but for counsel's deficient performance the result of the proceeding would have been different. *Strickland*, 466 U.S. at 688. Both prongs of the *Strickland* test must be met to demonstrate ineffective assistance. *Id.* at 687, 697. In applying this test, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id.* at 668,

9

688–89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689.

Ineffective-assistance-of-counsel claims are considered mixed questions of law and fact and, therefore, are analyzed under the "unreasonable application" standard of § 2254(d)(1). *See Gregory v. Thaler,* 601 F.3d 347, 351 (5th Cir. 2010). Where the state court has adjudicated the ineffective-assistance claims on the merits, this court must review petitioner's claims under the "doubly deferential" standards of both *Strickland* and § 2254(d). *Cullen v. Pinholster,* 563 U.S. 170, 190 (2011). In such cases, the "pivotal question" for this court is not "whether defense counsel's performance fell below *Strickland*'s standard"; it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter,* 562 U.S. at 101.

Petitioner asserts that his trial counsel, Kobby T. Warren, was ineffective by (1) failing to investigate whether the visiting judge had taken the oath of office; failing to object to prosecutorial misconduct during voir dire as stated under ground two; failing to consult or call experts to review or challenge the state's medical and/or forensic experts and/or evidence; and failing to develop any reasonable defense strategy. (Pet. 9, 19, doc. 1.) Petitioner raised his ineffective-assistance claims in his state habeas application, which was referred to a magistrate

10

to resolve the issues and prepare factual findings and
conclusions of law. (SHR 59, doc. 15-18.) Toward that end, the
magistrate ordered affidavits to be submitted. In his affidavit,
Warren responded to petitioner's allegations as follows (any
spelling, punctuation, and/or grammatical errors are in the
original):

> [Petitioner] alleges Affiant was ineffective
> Affiant asserts that EVERY allegation of [Petitioner]
> is erroneous, baseless, and groundless.
>
> Affiant was appointed to represent [Petitioner] on
> the 22nd day of April, 2016, and after preliminary
> introductions Affiant and [Petitioner] discussed the
> charges and allegations that
> [Petitioner] was facing.
>
> [Petitioner] was charged with the offenses of
> Sexual Assault of a child under 17 years of age and
> Aggravated Assault with a Deadly Weapon.
>
> Affiant explained to [Petitioner] that the penalty
> ranges for his offenses were normally from 2 years to
> 20 years in in the Texas Department of Criminal
> Justice. However, the State of Texas was alleging that
> [Petitioner] had been previously convicted and received
> a penitentiary sentence on at least two separate
> instances and if that was true then his penalty ranges
> would increase to 25 to 99 years, or Life in the Texas
> Department of Criminal Justice.
>
> Affiant and [Petitioner] discussed the facts,
> allegations, and the strength and weaknesses of the
> State's case against [Petitioner]. Including the fact
> that [Petitioner] was identified via a DNA profile.
>
> Affiant had always expressed to [Petitioner] that
> no matter the strength and/or weaknesses of the State's
> case the [Petitioner] had an absolute right to jury
> trial. [Petitioner] and Affiant further discussed that
> no one could take that decision from [Petitioner].

11

Affiant and [Petitioner] also discussed the risk associated with and the pros and cons of going to trial regarding this charge. Those discussions included, but were not limited to, witness credibility for both the State's and [Petitioner]'s witnesses.

Affiant specifically denies Ground Three where [Petitioner] alleges Affiant refused to object and investigate the qualifications of Honorable Roger E. Towery's as asserted in Ground One, especially since [Petitioner] never requested Affiant to do such, nor did Affiant have reason to question and/or investigate the qualifications of the Honorable Roger E. Towery. As of February 2017 Honorable Roger E. Towery was included on the available to Serve on Assignment list for the 8th Administrative Judicial Region as a Senior Judge. [Petitioner] was convicted of said offense on the 26th day of July 2017.

Affiant also specifically denies Ground Three where [Petitioner] alleges Affiant refused to object to the prosecutor's voir dire as [Petitioner] asserts in Ground Two. [Petitioner] alleges that during voir dire the prosecutor published nationally known sex offenders, which did not occur. During voir dire the prosecutor used random pictures as examples as to misconceptions that some people may have regarding what a person charged with a sex crime may look like. At no point during voir dire did the prosecutor point at, allude to, describe, and/or categorize [Petitioner] as a sex offender. Additionally, during nor after completion of voir dire did [Petitioner] have any objections with the jury empaneled in the case, and both [Petitioner] and Affiant were intimately involved in the selection of said jury.

Affiant also specifically denies Ground Three where [Petitioner] alleges Affiant failed to consult or call experts to review or challenge medical and/or forensic experts and/or evidence for the state. As previously stated, [Petitioner] and Affiant were both intimately involved in all decisions regarding this case including, but not limited to, trial strategy. One such trial strategy was that based on the fact Affiant's [sic] DNA profile was determined to be a match to the samples collected from the vaginal swabs of the complainant in this case by two different labs, UNT Center for Human Identification and the Texas

12

Department of Public Safety CODIS Laboratory, a
decision was made to not seek a 3rd opinion regarding
DNA.

Affiant also specifically denies Ground Three
where [Petitioner] alleges Affiant failed to develop
any reasonable defense strategy. As previously stated,
[Petitioner] and Affiant were both intimately involved
in all decisions regarding this case including, but not
limited to, the trial strategy decided upon in this
case. There were numerous discussions between Affiant
and [Petitioner] regarding the trial strategy of
forcing the State to prove its case beyond a reasonable
doubt based on the quantity and quality of evidence
that the State was going to present against
[Petitioner].

(Id. at 62-64.)

Based on counsel's affidavit and the documentary record, the

magistrate entered the following relevant factual findings:

12.  [Petitioner] never requested that Mr. Warren
     investigate or question the qualifications or
     jurisdiction of the Honorable Towery.

13.  Mr. Warren did not feel any reason to question the
     qualifications of the Honorable Towery.

14.  [Petitioner] presents no evidence to support his
     claim that Mr. Warren should have objected to the
     qualifications of the Honorable Towery.

15.  Mr. Warren's decision to not object to the
     Honorable Towery presiding over this case was the
     result of reasonable trial strategy.

16.  Mr. Warren did not object to the State's voir dire
     because he concluded it was proper as it addressed
     the misconceptions people have about sex offenders
     and did not, in any way, "allude to, describe,
     and/or categorize [Petitioner] as a sex offender."

17.  [Petitioner] never told Mr. Warren that he had any
     objection to the State's voir dire or with the
     jury ultimately empaneled.

18. Mr. Warren's decision to not object to the State's voir dire was the result of reasonable trial strategy.

19. [Petitioner] was involved in all decisions in this case.

20. Mr. Warren and [Petitioner] decided not to seek a third opinion regarding [Petitioner]'s DNA match after both the UNT Center for Human Identification and the Texas Department of Public Safety CODIS Laboratory concluded that [Petitioner]'s DNA was a match.

21. [Petitioner] presents no evidence that the two DNA tests done in this case were inaccurate, incorrect, or not performed properly.

22. Mr. Warren's decision to not seek a third opinion regarding the DNA testing was the result of reasonable trial strategy.

23. Mr. Warren discussed with [Petitioner] on numerous occasions that their defensive strategy was to force the State to prove its case beyond a reasonable doubt.

24. [Petitioner] presents no evidence, or specific facts, that there was evidence that Mr. Warren did not discover, consider, or present on [Petitioner]'s behalf.

25. [Petitioner] presents no evidence, or specific facts, that there was a defensive strategy available to [Petitioner] that Mr. Warren did not consider or put forth.

26. There is no evidence that Mr. Warren's chosen defensive strategy was not the result of reasonable trial strategy.

27. Mr. Warren's affidavit is credible and supported by the record.

28. There is no evidence that trial counsel's representation fell below an objective standard of reasonableness.

14

29.  There is no evidence that the outcome of the
     proceeding would have been different but for the
     alleged misconduct of trial counsel.

(Id. at 77-78 (record citations omitted).)

Based on those factual findings, and applying the *Strickland*

standard, the magistrate judge entered the following legal

conclusions:

25.  [Petitioner] has failed to prove that counsel
     should have objected to the Honorable Towery
     presiding over the trial.

26.  "There are three possible purposes for the voir
     dire examination of veniremen. The first purpose
     is to elicit information which would establish a
     basis for a challenge for cause because the
     venireman is legally disqualified from serving or
     is biased or prejudiced for or against one of the
     parties or some aspect of the relevant law.  This
     function furthers the defendant's constitutional
     right to (and society's interest in) an
     'impartial' jury. The second purpose is said to
     facilitate the intelligent use of peremptory
     challenges which may be 'exercised without a
     reason stated, without inquiry and without being
     subject to the court's control.' This function may
     further both the defendant's and prosecution's
     statutory right to make peremptory challenges. And
     the third purpose—albeit not necessarily a legally
     legitimate one—is to indoctrinate the jurors on
     the party's theory of the case and to establish
     rapport with the prospective jury members. This is
     of important practical interest to both the State
     and the defendant, but it has neither a
     constitutional nor a statutory basis. Voir dire
     for this purpose is entirely within the trial
     judge's discretion, and he may permit or prohibit
     it as he deems appropriate."

27.  [Petitioner] has failed to prove the State's use
     of pictures to address the misconceptions about
     sex offenders was an improper use of voir dire.

28. Mr. Warren's decision to not object to the State's voir dire, because he concluded it was proper, was the result of reasonable trial strategy.

29. Mr. Warren's decision to not request a third DNA test was the result of reasonable trial strategy.

30. Mr. Warren's chosen defense strategy was the result of reasonable trial strategy.

31. [Petitioner] has failed to prove that trial counsel's representation fell below an objective standard of reasonableness.

32. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

33. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.*"

34. [Petitioner] has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel objected more.

35. [Petitioner] has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel requested additional DNA testing.

36. [Petitioner] has failed to show that a reasonable likelihood exists that the outcome of the proceeding would have been different had counsel presented additional evidence.

37. [Petitioner] has failed to show that a reasonable likelihood exists that the outcome of the

proceeding would have been different had counsel
presented a different defensive theory.

38.    [Petitioner] has failed to show that there is a
reasonable probability that, but for the alleged
acts of misconduct, the outcome of the proceeding
would have been different.

39.    [Petitioner] has failed to prove that he received
ineffective assistance of trial counsel.

(Id. at 83-85 (citations omitted).)

The state habeas court adopted the magistrate's actions and
the Texas Court of Criminal Appeals denied relief on the trial
court's findings. (Id. at 92.)

Petitioner has failed to present clear and convincing
evidence to refute the state court's factual findings; thus,
deferring to those findings, the state court's application of
*Strickland* was not objectively unreasonable.[2] Petitioner's claims
are conclusory, with no legal and/or evidentiary basis, involve

---

[2]Petitioner presents for the first time in this federal habeas
proceeding copies of email communications between petitioner's sister and the
Elections Division of the Office of the Texas Secretary of State indicating
that that office did not have an Oath of Office for Judge Towery after 2012.
(Pet. Ex. A, doc. 1; Pet'r's Traverse 2, doc. 26.) However, generally a
federal court's "review under § 2254(d)(1) is limited to the record that was
before the state court that adjudicated the claim on the merits." *Cullen v.
Pinholster,* 563 U.S. 170, 180-81 (2011). Furthermore, under state law,
procedural irregularities in the referral of a matter to another judge do not
render a judgment void. *Davis v. State,* 956 S.W.2d 555, 560 (Tex. Crim. App.
1997). Under state law, jurisdiction lies with the court itself, not the
judge, as the judge is an officer of the court, he or she is not the court
itself. *Ex parte George,* 913 S.W.2d 523, 526 (Tex. Crim. App. 1996). Second,
"a lack of filing of any required oath is not proof, in itself, of the failure
of the judge to take the constitutionally required oaths." *Murphy v. State,* 95
S.W.3d 317, 320 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd). *See also
Thomas v. Burkhalter,* 90 S.W.3d 425, 427 (Tex. App.–Amarillo 2002, pet.
denied) (absence of oaths on file does not establish oaths were not taken).
Texas courts have also declined to find the failure to file an oath that has
been taken deprives an official of his authority. *Espinosa v. State,* 115
S.W.3d 64, 66 (Tex. App.–San Antonio 2003, no pet.); *Thomas,* 90 S.W.3d at 427.

matters of state law, involve strategic and tactical decisions made by counsel, or would have required counsel to make frivolous objections or arguments, all of which generally do not entitle a state petitioner to federal habeas relief. *See, e.g., Strickland,* 460 U.S. at 689 (holding strategic decisions by counsel are virtually unchallengeable and generally do not provide a basis for postconviction relief on the grounds of ineffective assistance of counsel); *Johnson v. Cockrell,* 306 F.3d 249, 255 (5th Cir. 2002) (concluding that counsel is not required to make futile motions or objections); *Evans v. Cockrell,* 285 F.3d 370, 377 (5th Cir. 2002) (providing petitioner must "bring forth" evidence, such as affidavits, from uncalled witnesses, including expert witnesses, in support of an ineffective-assistance claim); *Green v. Johnson,* 160 F.3d 1029, 1042 (5th Cir. 1998) (providing "[m]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue"); *Teague v. Scott,* 60 F.3d 1167, 1172 (5th Cir. 1995) (an "attorney's actions during voir dire are considered to be a matter of trial strategy").

Petitioner's asserts that his appellate counsel, Lisa Mullen, was ineffective by (1) ignoring his attempts to contact and confer with counsel and to check the status of the retired judge's oath of office and (2) withholding a "more vigorous effort due to lack of being retained for a fee." Pet. 11, 20,

doc. 1.) In her affidavit, Mullen responded to petitioner's
allegations as follows (any spelling, grammatical, and/or
punctuation errors are in the original):

> I aggressively and thoroughly represented
> [Petitioner] and used my best legal judgement and
> advice throughout the appellate proceedings. I
> carefully reviewed the indictments, facts and charges
> in the case as well as thoroughly reviewed the
> reporter's record and the clerks file a number of
> times. I wrote a brief raising the issue for review
> that I, in my professional judgement, felt was
> preserved and a good issue to possibly win his appeal.
>
> Although I did not visit him face to face in the
> penitentiary, I kept him informed of every step in the
> appeal process and immediately sent him every filing
> that was made and an explanation of the next step in
> the process. I also told him I would accept collect
> calls at my office; but I did not receive any from him.
>
> After the opinion was handed down from the Court
> of Appeals I sent him an additional letter and a copy
> of the opinion. I also told him I had gotten the trial
> court to allow me to file a PDR on his behalf as I felt
> we had an issue that the higher court needed to review
> and to make every possible effort to win his appeal.
> [Petitioner] sent me a letter back expressing his
> appreciation for my hard work and that he was grateful
> for how diligently I had fought for him.
>
> I also sent [Petitioner] a copy of the record with
> instructions for him to read it and send me a letter
> withy any input he had or issues he wanted me to raise.
> I never received a letter from [Petitioner] expressing
> a desire to raise the issue concerning the visiting
> judge nor a request to confer in person or by phone. As
> stated earlier, I accept collect calls from my clients
> and I told [Petitioner] this upon my initial contact
> with him. Further, there was no objection or challenge
> to the visiting judge during the trial or anywhere in
> the record and no evidence that the judge was not
> properly sworn.
>
> After the PDR was denied, I informed [Petitioner]
> of this fact and further explained his next appellate

steps. I told him that my appointment was concluded
upon the denial of the PDR so that he would know I was
not appointed to file further appeals or a writ. I
obviously did this so he would be aware that I was not
able to go forward so he could effectively pursue the
next appellate steps on his own or try to hire counsel.
I did not insinuate or state in any regard that being
appointed effected the diligence of my work for him as
it, without question, had no impact on my
representation of him nor any of my clients.

(SHR 71-73, doc. 15-18.)

Based on counsel's affidavit and the documentary record, the

magistrate entered the following relevant factual findings:

    31.  [Petitioner] presents no evidence, authority, or
          specific facts, to demonstrate that Ms. Mullen's
          communication constituted deficient
          representation.

    32.  Ms. Mullen wrote letters to [Petitioner] and sent
          him every filing.

    33.  Ms. Mullen never received any indication from
          [Petitioner] that he wished to confer with her
          either in person or by phone.

    34.  Ms. Mullen advised [Petitioner] that she would
          accept collect calls but has no record of ever
          receiving any from him.

    35.  Ms. Mullen advised [Petitioner] of every step in
          the appellate process.

    36.  Ms. Mullen sent [Petitioner] a copy of the record
          of the trial requesting that [Petitioner] provide
          her with any input or issues he wanted to raise.

    37.  Ms. Mullen never received a letter from
          [Petitioner] regarding the visiting judge issue.

    38.  There was no objection or challenge to the
          visiting judge during the trial.

    39.  There was no evidence in the record that the judge
          was not properly sworn.

40.  [Petitioner] presents no evidence, or allegation, that the record on appeal was sufficient to demonstrate that the Honorable Towery was not qualified to preside over [Petitioner]'s trial.

41.  Ms. Mullen reviewed the indictment, facts, charges, and both the reporter's record and clerk's record.

42.  Ms. Mullen raised the only issue she concluded was both preserved and presented the best chance to win on appeal.

43.  [Petitioner] presents no evidence, authority, or allegation, that Ms. Mullen's choice of issue was improper, incorrect, or not properly briefed.

44.  Ms. Mullen's choice of appellate issue was the result of reasonable appellate strategy.

45.  Ms. Mullen advised [Petitioner] of the appellate court's decision and filed a petition for discretionary review on his behalf.

46.  Ms. Mullen advised [Petitioner] that her representation was concluded after the denial of the petition for discretionary review and would not file further appeals or a writ on his behalf.

47.  [Petitioner] presents no evidence to support his claim that he received inferior representation because appellate counsel was appointed.

48.  Ms. Mullen's affidavit is credible and supported by the record.

49.  There is no evidence that appellate counsel's representation fell below an objective standard of reasonableness.

50.  There is no evidence that the outcome of the proceeding would have been different but for the alleged misconduct of appellate counsel.

(Id. at 78-80 (record citations omitted).)

Based on those factual findings, and applying the *Strickland* standard, the magistrate judge entered the following legal conclusions:

46. [Petitioner] has failed to prove that counsel's communication constituted deficient representation.

47. An attorney is under an ethical obligation not to raise frivolous issues on appeal.

48. An attorney is prohibited from raising claims on appeal that are not founded in the record.

49. To preserve error for appellate review, an appellant must make a timely, specific objection, at the earliest opportunity, and obtain an adverse ruling.

50. [Petitioner]'s claim that the Honorable Towery was not qualified to preside over [Petitioner]'s trial was not preserved for review.

51. Because [Petitioner]'s issue regarding the Honorable Towery was not preserved for review, appellate counsel properly did not raise it on direct appeal.

52. [Petitioner] has failed to prove that he received inferior representation because counsel was appointed.

53. [Petitioner] has failed to prove that his appellate attorney's representation fell below an objective standard of reasonableness.

54. A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct "sufficient to undermine confidence in the outcome" is not established.

55. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an

22

> ineffectiveness claim is not to grade counsel's performance. *If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."*

56.  [Petitioner] has failed to show that there is a reasonable likelihood that the outcome of the appellate proceeding would have been different had appellate counsel communicated with him more.

57.  [Petitioner] has failed to show that there is a reasonable likelihood that the outcome of the appellate proceeding would have been different had appellate counsel raised additional grounds on direct appeal.

58.  [Petitioner] has failed to show that there is a reasonable likelihood that, but for the alleged acts of misconduct, the result of the appellate proceeding would have been different.

59.  [Petitioner] has failed to prove that he received ineffective assistance of appellate counsel.

(Id. at 85-87 (citations omitted).)

The state habeas court adopted the magistrate's actions and the Texas Court of Criminal Appeals denied relief on the trial court's findings. (Id. at 92.)

Petitioner has failed to present clear and convincing evidence to refute the state court's factual findings; thus, deferring to those findings, the state court's application of *Strickland* was not objectively unreasonable. Appellate counsel is not required to raise every conceivable argument urged by his or her client on appeal, regardless of merit. *Smith v. Robbins,* 528 U.S. 259, 287-88 (2000). It is counsel's duty to choose among potential issues, according to his or her judgment as to their

23

merits and the tactical approach taken. *Jones v. Barnes,* 463 U.S. 745, 749 (1983). Petitioner presents no potentially meritorious issues that appellate counsel could or should have included in his appellate brief. Appellate counsel is not ineffective for failing to assert meritless claims or arguments. *See United States v. Wilkes,* 20 F.3d 651, 653 (5th Cir. 1994).

Finally, petitioner claims that the cumulative effective of trial and appellate counsel's ineffectiveness create a reasonable probability of a different result. However, because petitioner fails to establish separate acts of deficient performance, it necessarily follows that relief is not warranted under a cumulative *Strickland* analysis. The court further notes that even if petitioner could demonstrate defective assistance based on one or more of his claims, in view of the overwhelming evidence of his guilt, he cannot make a showing of *Strickland* prejudice. Petitioner is not entitled to relief under his third and fourth grounds.

For the reasons discussed,

The court ORDERS the petition of petitioner for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be, and is hereby, denied. The court further ORDERS that a certificate of appealability be, and is hereby, denied, as petitioner has not made a substantial showing of the denial of a constitutional

24

right or that the court's procedural ruling are debatable or wrong.

　　　SIGNED April 23, 2021.

JOHN MCBRYDE
UNITED STATES DISTRICT JUDGE